(Slip Opinion) OCTOBER TERM, 2022 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SMITH *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 21–1576.   Argued March 28, 2023—Decided June 15, 2023

Timothy Smith was indicted in the Northern District of Florida for theft of trade secrets from a website owned by StrikeLines. Before trial, Smith moved to dismiss the indictment for lack of venue, citing the Constitution's Venue Clause, Art. III, §2, cl. 3, and its Vicinage Clause, Amdt. 6. Smith argued that trial in the Northern District of Florida was improper because he had accessed StrikeLines' website from his home in Mobile (in the Southern District of Alabama) and the servers storing StrikeLines' data were located in Orlando (in the Middle District of Florida). The District Court concluded that factual disputes related to venue should be resolved by the jury and denied Smith's motion to dismiss without prejudice. The jury found Smith guilty, and Smith moved for a judgment of acquittal based on improper venue. See Fed. Rule Crim. Proc. 29. The District Court denied the motion, reasoning that the effects of Smith's crime were felt at StrikeLines' headquarters, located in the Northern District of Florida. On appeal, the Eleventh Circuit determined that venue was improper, but disagreed with Smith that a trial in an improper venue barred reprosecution. The Eleventh Circuit therefore vacated Smith's conviction for theft of trade secrets.

*Held*: The Constitution permits the retrial of a defendant following a trial in an improper venue conducted before a jury drawn from the wrong district. Pp. 3–16.

   (a) Except as prohibited by the Double Jeopardy Clause, it "has long been the rule that when a defendant obtains a reversal of a prior, unsatisfied conviction, he may be retried in the normal course of events." *United States* v. *Ewell*, 383 U. S. 116, 121. In all circumstances outside of the Speedy Trial Clause, the strongest appropriate remedy for trial error is a new trial, not a judgment barring reprosecution. Pp. 3–4.

(1) Text and precedent provide no basis for concluding that viola-
tions of the Venue and Vicinage Clauses are exceptions to the retrial
rule. The Venue Clause mandates that the "Trial of all Crimes . . .
shall be held in the State where the . . . Crimes shall have been com-
mitted." Art. III, §2, cl. 3. Nothing about this language suggests that
a new trial in the proper venue is not an adequate remedy for its vio-
lation. Smith primarily argues that the Venue Clause aims to prevent
the infliction of additional harm on a defendant who has already un-
dergone the hardship of an initial trial in a distant and improper place.
But the mere burden of a second trial has never justified an exemption
from the retrial rule. See *Ewell*, 383 U. S., at 121. Indeed, while the
most convenient trial venue for a defendant would presumably be
where he lives, the Venue Clause is keyed to the location of the alleged
crimes. The Clause does not allow "variation . . . for convenience of the
. . . accused," *Johnston* v. *United States*, 351 U. S. 215, 221, and this
Court has repeatedly rejected objections based on the hardships cre-
ated when a defendant is prosecuted far from home.

The Vicinage Clause—which guarantees "the right to . . . an impar-
tial jury of the State and district wherein the crime shall have been
committed," Amdt. 6—similarly provides no support for Smith's argu-
ment that retrial is barred here. The Vicinage Clause differs from the
Venue Clause in two ways: it concerns jury composition, not the place
where a trial may be held, and it concerns the district where the crime
was committed, rather than the State. Nothing about these differences
dictates a remedy that is broader than the one awarded when the
Venue Clause is violated. The vicinage right is only one aspect of the
jury-trial rights protected by the Sixth Amendment, and the Court has
repeatedly acknowledged that retrials are the appropriate remedy for
violations of other jury-trial rights. Most analogous to this case, the
Court has held that retrial is the appropriate remedy when a defend-
ant is tried by a jury that does not reflect a fair cross-section of the
community. See *Glasser* v. *United States*, 315 U. S. 60, 85–87. There
is no reason to conclude that trial before a jury drawn from the wrong
geographic area demands a different remedy. Pp. 4–7.

(2) The historical background of the Venue and Vicinage Clauses
similarly does not demand a departure from the retrial rule. The com-
mon-law "vicinage" right presumptively entitled defendants to a jury
of the "neighbourhood" where the crime was allegedly committed. 4
W. Blackstone, Commentaries on the Laws of England 344. As a prac-
tical matter, this right imposed a venue requirement: Trials needed to
be held at the location where "the matter of fact issuable" allegedly
occurred to allow the "Inhabitants whereof " to serve on the jury. E.
Coke, 1 Institutes of the Laws of England §193, p. 125. History reveals
that the common-law vicinage right was highly prized by the founding

generation, and this right undoubtedly inspired the Venue and Vicinage Clauses in the Constitution. Although the Clauses as adopted depart in some respects from the common law—most notably by providing new specifications about the place where a crime may be tried—there is no meaningful evidence to support Smith's contention that the Constitution altered the remedy prescribed by common law for violations of the vicinage right.

By the time of the founding, compelling evidence supported the conclusion that pleas of prior acquittal or conviction could not be grounded on a verdict issued in or returned by a jury from the wrong vicinage. See *Arundel's Case*, 6 Co. Rep. 14a, 77 Eng. Rep. 273. Judicial decisions and prominent treatises of the time and since reflect no common-law principle at the founding that precluded retrial following a trial in an improper venue or before an improper jury. Indeed, this Court embraced the retrial rule for a venue error in *United States* v. *Jackalow*, 1 Black 484, and this decision did not break new ground. The Court has found—and Smith points to—no decision barring retrial based on a successful venue or vicinage objection in either the centuries of common law predating the founding or in the early years of practice following ratification. This absence alone is considerable evidence that the clauses do not bar retrial of their own force. See, *e.g.*, *Gamble* v. *United States*, 587 U. S.\_\_\_, \_\_\_. Moreover, courts affirmatively allowed retrial following trials in an improper venue or before improperly constituted juries. This leaves no reason to doubt that the retrial rule applies here. Pp. 7–14.

(b) The Court rejects Smith's argument that the Double Jeopardy Clause is implicated by retrial in a proper venue. A judicial decision on venue is fundamentally different from a jury's general verdict of acquittal. When a jury returns a general verdict of not guilty, its decision "cannot be upset by speculation or inquiry into such matters" by courts. *Dunn* v. *United States*, 284 U. S. 390, 393–394. And because it is impossible for courts to be certain about the ground for the verdict without improperly delving into jury deliberations, the basis for the jury's verdict cannot be a ground for setting aside an acquittal. General verdicts of acquittal are thus consistent with the general rule that "[c]ulpability . . . is the touchstone" for determining whether retrial is permitted under the Double Jeopardy Clause. *Evans* v. *Michigan*, 568 U. S. 313, 324. Under that rule, when a trial terminates with a finding that the defendant's "criminal culpability had not been established," retrial is prohibited. *Burks* v. *United States*, 437 U. S. 1, 10. Conversely, retrial is permissible when a trial terminates "on a basis unrelated to factual guilt or innocence of the offence of which [the defendant] is accused," *United States* v. *Scott*, 437 U. S. 82, 99, *e.g.,* juror deadlock, see *Blueford* v. *Arkansas*, 566 U. S. 599, 610. Similarly, the

Syllabus

reversal of a conviction based on a violation of the Venue or Vicinage Clauses, even when styled as a "judgment of acquittal" under Rule 29, plainly does not resolve "the bottom-line question of 'criminal culpability.'" *Evans*, 568 U. S., at 324, n. 6. In this case, then, the Eleventh Circuit's decision that venue was improper did not adjudicate Smith's culpability, and thus does not trigger the Double Jeopardy Clause. Pp. 14–16.

22 F. 4th 1236, affirmed.

ALITO, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
United States Reports. Readers are requested to notify the Reporter of
Decisions, Supreme Court of the United States, Washington, D. C. 20543,
pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

————

No. 21–1576

————

## TIMOTHY J. SMITH, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

[June 15, 2023]

JUSTICE ALITO delivered the opinion of the Court.

When a conviction is reversed because of a trial error, this Court has long allowed retrial in nearly all circumstances. We consider in this case whether the Constitution requires a different outcome when a conviction is reversed because the prosecution occurred in the wrong venue and before a jury drawn from the wrong location. We hold that it does not.

I

Timothy Smith is a software engineer and avid angler from Mobile, Alabama, who spends much of his time fishing, sailing, and diving in the Gulf of Mexico. In 2018, he discovered StrikeLines, a company that uses sonar equipment to identify private, artificial reefs that individuals construct to attract fish. StrikeLines sells the geographic coordinates of those reefs to interested parties. This business model irritated Smith, who believed that StrikeLines was unfairly profiting from the work of private reef builders.

Smith used a web application to obtain tranches of coordinates from the company's website surreptitiously. He then announced on a social-media website that he had

StrikeLines' data and invited readers to message him and "'see what ree[f]'" coordinates StrikeLines had discovered. 22 F. 4th 1236, 1239 (CA11 2022) (case below). When contacted by StrikeLines, Smith offered to remove his social-media posts and fix the company's security issues in exchange for "'one thing'": the coordinates of certain "'deep grouper spots'" that he had apparently been unable to obtain from the website. *Ibid.* The ensuing negotiations over grouper coordinates eventually failed, leading StrikeLines to contact law-enforcement authorities.

Smith was indicted in the Northern District of Florida for, among other charges, theft of trade secrets. See 18 U. S. C. §1832(a)(1). Before trial, he moved to dismiss the indictment for lack of venue, citing the Constitution's Venue Clause, Art. III, §2, cl. 3, and its Vicinage Clause, Amdt. 6. He argued that trial in the Northern District of Florida was improper because he had accessed the data from Mobile (in the Southern District of Alabama) and the servers storing StrikeLines' coordinates were located in Orlando (in the Middle District of Florida). The District Court concluded that the jury needed to resolve factual disputes related to venue, and it therefore denied the motion to dismiss without prejudice. After the jury returned a verdict of guilty under §1832(a)(1), Smith moved for a judgment of acquittal based on improper venue. See Fed. Rule Crim. Proc. 29. The District Court denied the motion, reasoning that StrikeLines felt the effects of the crime at its headquarters in the Northern District of Florida.

On appeal, the Eleventh Circuit held that venue was improper on the trade secrets charge, but it disagreed with Smith that this error barred reprosecution. It concluded that the "remedy for improper venue is vacatur of the conviction, not acquittal or dismissal with prejudice," and that the "Double Jeopardy [C]lause is not implicated by a retrial in a proper venue." 22 F. 4th, at 1244.

We granted certiorari to determine whether the Constitution permits the retrial of a defendant following a trial in an improper venue and before a jury drawn from the wrong district. 598 U. S. \_\_\_ (2022).[1]

## II

### A

Except as prohibited by the Double Jeopardy Clause, it "has long been the rule that when a defendant obtains a reversal of a prior, unsatisfied conviction, he may be retried in the normal course of events." *United States* v. *Ewell*, 383 U. S. 116, 121 (1966); accord, *Bravo-Fernandez* v. *United States*, 580 U. S. 5, 18–19 (2016). Remedies for constitutional violations in criminal trials, we have explained, "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States* v. *Morrison*, 449 U. S. 361, 364 (1981). When a conviction is obtained in a proceeding marred by harmful trial error, "the accused has a strong interest in obtaining a fair readjudication of his guilt," and society "maintains a valid concern for insuring that the guilty are punished." *Burks* v. *United States*, 437 U. S. 1, 15 (1978). Therefore, the appropriate remedy for prejudicial trial error, in almost all circumstances, is simply the award of a retrial, not a judgment barring reprosecution. See, *e.g.*, *Morrison*, 449 U. S., at 363, 365–367; *United States* v. *Blue*, 384 U. S. 251, 254–255 (1966).[2]

_____

[1] The Government did not cross-appeal the Eleventh Circuit's decision that venue for trade secrets theft was improper in the Northern District of Florida. We thus express no opinion on that issue. See, *e.g.*, *Burks* v. *United States*, 437 U. S. 1, 5 (1978). We likewise do not resolve whether venue on that charge would be proper in the Middle District of Florida, a question that the Eleventh Circuit declined to address. See *Cutter* v. *Wilkinson*, 544 U. S. 709, 718, n. 7 (2005) ("[W]e are a court of review, not of first view").

[2] In some circumstances, a constitutional violation may not require retrial. See, *e.g.*, *Waller* v. *Georgia*, 467 U. S. 39, 49–50 (1984).

We have recognized one exception to this general rule: violations of the Speedy Trial Clause, which we have described as "generically different" from "any" other criminal right in the Constitution, *Barker* v. *Wingo*, 407 U. S. 514, 519 (1972), preclude retrial.  In all other circumstances, we have found that retrial is the strongest appropriate remedy, and we have applied this rule to every other Clause of the Sixth Amendment except for the Vicinage Clause (which we now address along with the Venue Clause).[3]

### B

Against this backdrop, we are asked to consider whether violations of the Venue and Vicinage Clauses are exceptions to the retrial rule.  Text and precedent provide no basis for that result.

We start with the Venue Clause, which concerns the place where a trial must be held.  That Clause mandates that the "Trial of all Crimes . . . shall be held in the State where the . . . Crimes shall have been committed."  Art. III, §2, cl. 3.[4]  Nothing about the language that frames this requirement suggests that a new trial in the proper venue is

—————————

[3] See, *e.g.*, *Weaver* v. *Massachusetts*, 582 U. S. 286, 305 (2017) (Counsel Clause); *Waller*, 467 U. S., at 49–50 (Public Trial Clause); *Ramos* v. *Louisiana*, 590 U. S. ___, ___–___ (2020) (slip op., at 22–23) (Jury Clause); *Idaho* v. *Wright*, 497 U. S. 805, 813, 827 (1990) (Confrontation Clause); *Pennsylvania* v. *Ritchie*, 480 U. S. 39, 56, 58 (1987) (Compulsory Process Clause); *Russell* v. *United States*, 369 U. S. 749, 761, 764, 770 (1962) (Arraignment Clause); see also, *e.g.*, *Grunewald* v. *United States*, 353 U. S. 391, 424 (1957) (Self-Incrimination Clause); *Russell*, 369 U. S., at 761, 769–770 (Grand Jury Clause); *Kyles* v. *Whitley*, 514 U. S. 419, 421–422 (1995) (Due Process Clause); *Hill* v. *Texas*, 316 U. S. 400, 406 (1942) (holding that a State may file a new indictment following the postconviction dismissal of an indictment under the Equal Protection Clause); *United States* v. *Morrison*, 449 U. S. 361, 364–365 (1981) (collecting other decisions).

[4] The Venue Clause also includes a necessary exception: the trial for crimes "not committed within any State . . . shall be at such Place or Places as the Congress may by Law have directed."  Art. III, §2, cl. 3.

not an adequate remedy for its violation.

Smith contends that the purpose of the Venue Clause supports his argument, but that argument is unpersuasive for at least two reasons. First, the purpose he attributes to the Clause is insufficient to justify a departure from the general retrial rule. Smith primarily argues that the Venue Clause aims to prevent the infliction of additional harm on a defendant who has already undergone the hardship of an initial trial in a distant and improper place. But any criminal trial, whether or not in the right venue, imposes hardship, and any retrial after a reversal for trial error adds to that initial harm. Indeed, in some cases, the lost time, emotional burden, and expense of a flawed initial trial in a defendant's home State may exceed the hardship of an initial trial in a State that is nearby but improper under the Venue Clause. And the mere burden of a second trial has never justified an exemption from the retrial rule. See *Ewell*, 383 U. S., at 121.

Second, Smith's argument exaggerates the connection between the venue right and the hardship of trial in an improper venue. The most convenient trial venue for a defendant would presumably be where he lives, and yet the Venue Clause is keyed to the location of the alleged "Crimes," Art. III, §2, cl. 3, "not . . . the district where the accused resides, or even . . . the district in which he is personally at the time of committing the crime," *In re Palliser*, 136 U. S. 257, 265 (1890). Thus, the Clause does not allow "variation . . . for convenience of the . . . accused." *Johnston* v. *United States*, 351 U. S. 215, 221 (1956); accord, *e.g.*, *Armour Packing Co.* v. *United States*, 209 U. S. 56, 77 (1908). The State in which a crime is committed may be far from a defendant's residence. For example, a resident of New York charged with committing a crime during a short visit to Hawaii may be tried in Hawaii under the Venue Clause even though that trial may be very inconvenient. Equally telling, the Clause would *preclude* trial for that crime in New

York unless it somehow extended to the State. See, *e.g.*, *Travis* v. *United States*, 364 U. S. 631, 634–637 (1961) (holding that prosecution was proper only in Washington, D. C., rather than in the defendant's residence in Colorado); *United States* v. *Lombardo*, 241 U. S. 73, 76–78 (1916) (holding the same for a defendant who resided in Washington State). If avoiding hardship to a defendant were a "core purpos[e]" of the Venue Clause, Brief for Petitioner 18, such results would be inexplicable.

This disconnect between the State where trial would be least burdensome and the State where a crime was committed is exacerbated by the fact that many federal crimes occur in multiple States. We have held that a trial may be held "'where any part'" of a crime "'can be proved to have been done.'" *United States* v. *Rodriguez-Moreno*, 526 U. S. 275, 281 (1999) (quoting *Lombardo*, 241 U. S., at 77). As a result, the Venue Clause permits a defendant charged with conspiracy to be tried in any State in which any co-conspirator took any overt act in furtherance of the endeavor, *Hyde* v. *United States*, 225 U. S. 347, 365–367 (1912), and a defendant charged with illegally shipping goods may be tried in any State through which the goods were illegally transported, *Armour Packing*, 209 U. S., at 76–77. In these cases, as others, we have repeatedly rejected objections based on the "serious hardship in . . . prosecutions in places distant from the [defendant's] home." *Id.*, at 77.

The Vicinage Clause provides no stronger textual support for petitioner's argument. That Clause guarantees "the right to . . . an impartial jury of the State and district wherein the crime shall have been committed." Amdt. 6. The coverage of this Clause "reinforce[s]" the coverage of the Venue Clause because, in protecting the right to a jury drawn from the place where a crime occurred, it functionally prescribes the place where a trial must be held. *Rodriguez-Moreno*, 526 U. S., at 278; *Travis*, 364 U. S., at

634; see, *e.g.*, *Palliser*, 136 U. S., at 265. But the Vicinage Clause differs from the Venue Clause in two ways: it concerns jury composition, not the place where a trial may be held, and it narrows the place where trial is permissible by specifying that a jury must be drawn from "the State *and district* wherein the crime shall have been committed." Amdt. 6 (emphasis added).

Nothing about these differences dictates a remedy that is broader than the one awarded when the Venue Clause is violated. The vicinage right is only one aspect of the jury-trial rights protected by the Sixth Amendment, and we have repeatedly acknowledged that retrials are the appropriate remedy for violations of other jury-trial rights. See, *e.g.*, *Ramos* v. *Louisiana*, 590 U. S. \_\_\_, \_\_\_–\_\_\_ (2020) (slip op., at 22–23) (non-unanimous jury); *Pena-Rodriguez* v. *Colorado*, 580 U. S. 206, 228 (2017) (racially biased jury); *Sheppard* v. *Maxwell*, 384 U. S. 333, 362–363 (1966) (partial jury). Most analogous to the case before us, we have recognized that retrial is the appropriate remedy when a defendant is tried by a jury that does not reflect a fair cross-section of the community. See, *e.g.*, *Glasser* v. *United States*, 315 U. S. 60, 85–87 (1942). There is no reason to conclude that trial before a jury drawn from the wrong geographic area demands a different remedy than trial before a jury drawn inadequately from within the community.

### C

Failing to demonstrate that he is entitled to an acquittal based on text or precedent, Smith appeals to the historical background of the Venue and Vicinage Clauses. The history underlying the Clauses cannot justify an exception to the retrial rule.

### 1

In examining this history, the relevant starting point, as both parties agree, is the common-law "vicinage" right,

which presumptively entitled defendants to a jury of the "neighbourhood" where the crime was allegedly committed. 4 W. Blackstone, Commentaries on the Laws of England 344 (1769) (Blackstone). As a practical matter, this right imposed a venue requirement: trials needed to be held at the location where "the matter of fact issuable" allegedly occurred to allow the "Inhabitants whereof" to serve on the jury. 1 E. Coke, Institutes of the Laws of England §193, at 125 (1628) (Coke).[5]

Both of these requirements were well settled by the founding. See, *e.g.*, *Rex* v. *Harris*, 3 Burr. 1330, 1334, 97 Eng. Rep. 858, 860 (K. B. 1762) (Wilmot, J.) (opining that there was "no rule better established" than "'that all causes shall be tried in the county, and by the neighbourhood of the place, where the fact is committed'"). Smith contends, however, that the Constitution not only incorporated this right but "elevated" it "to an even higher stature in American law," and that this enhanced right favors his preferred remedy. Brief for Petitioner 21. The historical record, however, does not support this argument.

There is no question that the founding generation enthusiastically embraced the vicinage right and wielded it "as a political argument of the Revolution."[6] Prior to the Revolution, Parliament enacted measures to circumvent local trials before colonial juries, most notably by authorizing trials in England for both British soldiers charged with murdering colonists and colonists accused of treason.[7] The Conti-

───────────

[5] See W. Blume, The Place of Trial in Criminal Cases, 43 Mich. L. Rev. 59, 61 (1944) (Blume); D. Kershen, Vicinage, 29 Okla. L. Rev. 801, 811–812, 830–831 (1976).

[6] F. Heller, The Sixth Amendment to the Constitution of the United States 95 (1951) (Heller); see Blume 65–66; J. Reid, Constitutional History of the American Revolution: The Authority of Rights 53–55 (1986).

[7] See 14 Geo. 3, c. 39 (1774); Proceedings in Both Houses Respecting the Discontents in America, Feb. 8, 1769, in 16 Parliamentary History of

nental Congress and colonial legislatures forcefully objected to trials in England before loyalist juries, characterizing the practice as an affront to the existing "common law of England, and more especially to the great and inestimable privilege of being tried by . . . peers of the vicinage."[8] The Declaration of Independence also denounced these laws, under which, it said, British soldiers were "protect[ed] . . . by a mock Trial" and colonists were "transport[ed] . . . beyond the Seas to be tried for pretended offences."[9]  As States declared independence, most incorporated some form of a venue or vicinage clause in their governing documents, but none of these provisions specified a particular remedy for violations.[10]

––––––––––

England From the Earliest Period to the Year 1803, at 510–511 (T. Hansard ed. 1813) (approving the use of the Treason Act of 1543, 35 Hen. 8, c. 2).

[8] Declaration and Resolves of the First Continental Congress, Oct. 14, 1774, in 1 Journals of the Continental Congress, 1774–1789, at 69 (W. Ford. ed. 1904); accord, *e.g.*, Virginia Resolves, May 16, 1769, Journals of the House of Burgesses of Virginia, 1766–1769, at 214 (J. Kennedy ed. 1906); Resolutions of July 7, 1769, in 45 Journals of the House of Representatives of Massachusetts 59–60 (1976); Resolutions of Aug. 27, 1774, in 9 Colonial Records of North Carolina 1045 (W. Saunders ed. 1890); see also J. Reid, Constitutional History of the American Revolution: The Authority To Legislate 281–286 (1991).

[9] Declaration of Independence ¶¶17, 21; see E. Dumbauld, The Declaration of Independence 133–137 (1950).

[10] See Del. Decl. of Rights §13 (1776), in 1 B. Schwartz, The Bill of Rights: A Documentary History 278 (1971); Del. Const., Art. 30 (1776), in 1 Federal and State Constitutions 568 (F. Thorpe ed. 1909) (Thorpe); Md. Const., Decl. of Rights, Art. XVIII (1776), in 3 *id.*, at 1688; Pa. Const., Decl. of Rights, Art. IX (1776), in 5 *id.*, at 3083; Va. Const., Bill of Rights §8 (1776), in 7 *id.*, at 3813; S. C. Const., Art. XVIII (1776), in 6 *id.*, at 3246; Ga. Const., Art. XXXIX (1777), in 2 *id.*, at 783; Mass. Const., Decl. of Rights, Art. XIII (1780), in 3 *id.*, at 1891; N. H. Const., Bill of Rights, Art. XVII (1784), in 4 *id.*, at 2455–2456; N. Y. Bill of Rights ¶3 (1787), in The Complete Bill of Rights 410 (N. Cogan ed. 1997); see also N. C. Const., Decl. of Rights, Art. IX (1776), in 5 Thorpe 2787 (preserving the jury right "as heretofore used").

The common-law vicinage right, both as a jury require-
ment and as a proxy for venue, remained prominent during
debates over the ratification of the Constitution. As origi-
nally proposed, the Constitution contained only the Venue
Clause, which, as noted, says nothing about jury composi-
tion. Appealing to "ancient common law," Anti-Federalists
objected to this omission.[11] Federalists responded that Con-
gress could secure the vicinage right by statute, analogizing
to common law, where "the preservation of this right [was]
in the hands of Parliament."[12]

After the ratification of the Constitution, Congress
yielded in part to the Anti-Federalists' argument and in-
cluded a vicinage right in the Sixth Amendment. James
Madison's initial draft of the Amendment required a jury
"of the vicinage," 1 Annals of Cong. 435 (1789), but Con-
gress amended that language so that it guaranteed a jury
from the State of the crime and from any smaller judicial
districts that Congress chose to create.[13]

This history tells us two important things about the way
in which the Constitution dealt with the common-law vici-
nage right. First, the right was highly prized by the found-
ing generation, and this right undoubtedly inspired the
Venue and Vicinage Clauses. Second, although the Clauses
depart in some respects from the common law—most nota-
bly by providing new specifications about the place where a

---

[11] 3 Debates on the Constitution 446–447 (J. Elliot ed. 1836) (Elliot's
Debates) (P. Henry); see, *e.g.*, 1 *id.*, at 504 (R. Lee); 2 *id.*, at 109–110 (A.
Holmes); *id.*, at 400 (T. Tredwell); 3 *id.*, at 568–569 (W. Grayson); 4 *id.*,
at 150, 211 (J. M'Dowall); Federal Farmer No. 4 (1787), in 2 The Com-
plete Anti-Federalist 249 (H. Storing ed. 1981) (Storing); see also, *e.g.*, 4
Elliot's Debates 154–155 (S. Spencer); Agrippa No. 5 (1787), in 4 Storing
78–79.

[12] 3 Elliot's Debates 558 (J. Marshall); see also, *e.g.*, *id.*, at 537 (J. Mad-
ison); *id.*, at 451 (G. Nicholas); *id.*, at 520–521 (E. Pendleton); 4 *id.*, at
147–148 (J. Iredell); *id.*, at 175–176 (A. Maclaine).

[13] See Heller 93; E. Kaufman, Territoriality in American Criminal Law,
121 Mich. L. Rev. 353, 366–367 (2022).

crime may be tried—there is no meaningful evidence that the Constitution altered the remedy prescribed by common law for violations of the vicinage right.

2

With this background in mind, we examine the remedy at common law for an initial trial in the wrong venue or before a jury drawn from the wrong vicinage, and we find that this history does not demand a departure from the retrial rule. By the time of the founding, compelling evidence supported the conclusion that pleas of prior acquittal or conviction could not be grounded on a verdict issued in or returned by a jury from the wrong vicinage.

The leading decision at common law was *Arundel's Case*, 6 Co. Rep. 14a, 77 Eng. Rep. 273 (K. B. 1593), which concerned a vicinage challenge to a jury that had found the defendant guilty of murder. *Id.*, at 14a–14b, 77 Eng. Rep., at 274. The King's Bench arrested judgment on the conviction because the jury was insufficiently local, but it did not bar retrial. *Ibid.* Instead, "a new *venire facias* [was] awarded to try the issue again." *Ibid.*; see also *Vaux's Case*, 4 Co. Rep. 44a, 45a, 76 Eng. Rep. 992, 994 (K. B. 1591) (adopting a similar rationale for insufficient indictments). Discussing *Arundel's Case* at length, Sir Edward Coke's 17th-century treatise agreed that juries lacked authority to convict outside of their vicinage and added that a verdict by an improperly constituted jury would cause a "mistryall." 1 Coke §193, at 125; see also 3 *id.*, at 137 (1644); *Rex* v. *Fenwicke*, 1 Keble 546, 83 Eng. Rep. 1104 (K. B. 1662) (recognizing the availability of retrial "for misawarding of venue"); *Rex* v. *Talbot*, Cro. Car. 311, 312, 79 Eng. Rep. 871, 872 (K. B. 1633) (awarding a new jury venire to remedy a vicinage error).

*Arundel's* remedy remained unchanged throughout the 18th century. Because "indictments are local," one prominent treatise explained, a prior acquittal on an indictment

"laid in an improper county" would not "bar . . . a subsequent indictment in the proper county." 2 W. Hawkins, Pleas of the Crown 526 (6th ed. 1788). Hale and Blackstone reached similar conclusions. See 2 M. Hale, History of the Pleas of the Crown 245 (1736) (concluding that a second prosecution was available for indictments in different counties because courts "can only inquire touching a felony" in their own county); 4 Blackstone 368–369 (explaining that a defendant "may be indicted again" when a judgment of conviction is arrested for failure to adequately identify "the place" of the crime in the indictment); see also, *e.g.*, *Rex* v. *Huggins*, 2 Ld. Raym. 1574, 1585, 92 Eng. Rep. 518, 525 (K. B. 1730) (approvingly citing the remedy in *Arundel's Case*). In sum, no common-law principle at the founding precluded retrial following a trial in an improper venue or before an improper jury.

Early American practice provides further confirmation that violations of the Venue and Vicinage Clauses do not exempt defendants from retrial. Cf. *Ramos*, 590 U. S., at ___ (slip op., at 6); *District of Columbia* v. *Heller*, 554 U. S. 570, 605 (2008); *Crawford* v. *Washington*, 541 U. S. 36, 49–50 (2004). Perhaps most relevant here, this Court embraced the retrial rule for a venue error in *United States* v. *Jackalow*, 1 Black 484 (1862). In that case, the defendant had been convicted in New Jersey for a crime committed on a ship located off the coast of New York and Connecticut. Because the crime occurred outside of New Jersey, trial in that State was proper under the Venue and Vicinage Clauses only if the crime was committed outside the limits of *any* State. See *supra,* at 4, n. 3. And because the jury's special verdict on the issue of venue did not establish that fact, the Court directed the lower court "to set aside the special verdict, and grant a new trial." *Jackalow*, 1 Black, at 488.

This decision did not break new ground. Decades earlier, Justice Story had concluded that "there are cases where

there may be a new trial; as in cases of a mis-trial by an improper jury," *United States* v. *Gibert*, 25 F. Cas. 1287, 1302 (No. 15,204) (CC Mass. 1834) (citing *Arundel's Case*), and Justice Iredell had found it "unnecessary" to consider a vicinage objection because a new trial was warranted on other grounds, *United States* v. *Fries*, 3 Dall. 515, 518 (CC Pa. 1799). Other federal decisions ordered retrials for venue violations, see *United States* v. *Plympton*, 27 F. Cas. 578 (No. 16,057) (CC DC 1833), or otherwise accepted that a retrial would be sufficient to cure such an error, see, *e.g., United States* v. *Keen*, 26 F. Cas. 686, 690 (No. 15,510) (CC Ind. 1839) ("It is laid down in all the authorities, that if the court have not jurisdiction . . . or the jury have not been legally summoned, the defendant, though tried, cannot be considered as having been in jeopardy"). State courts had likewise begun reaching similar conclusions, notwithstanding the existence of venue and vicinage clauses in their State Constitutions.[14] Given these developments, it is not surprising that American treatises from this period agreed with their English counterparts regarding the availability of retrial.[15]

Far from justifying an exemption from the retrial rule, the historical background of the Venue and Vicinage Clauses supports the opposite inference. We have found— and Smith points to—no decision barring retrial based on a successful venue or vicinage objection in either the centuries of common law predating the founding or in the early years of practice following ratification. This absence alone

_____

[14] See, *e.g.*, *Commonwealth* v. *Call*, 38 Mass. 509, 514–515 (1839); *State* v. *George*, 8 La. 535, 539–540 (1844); *Methard* v. *State*, 19 Ohio St. 363, 367 (1869).

[15] See, *e.g.*, F. Wharton, Criminal Law 139 (1846) ("An acquittal upon an indictment in a wrong county, cannot be pleaded to a subsequent indictment for the offence in another county"); 1 J. Chitty, Criminal Law 309 (Am. ed. 1819) (similar); 1 W. Russell & C. Greaves, Crimes and Misdemeanors 835 (5th Am. ed. 1845) (similar); 2 M. Hale, The History of the Pleas of the Crown 255, n. 1 (1st Am. ed. 1847) (similar).

is considerable evidence that the Clauses do not bar retrial
of their own force. See, *e.g.*, *Gamble* v. *United States*, 587
U. S. \_\_\_, \_\_\_ (2019) (slip op., at 12). Moreover, courts af-
firmatively allowed retrial following trials in an improper
venue or before improperly constituted juries. All told, we
have no reason to doubt that the retrial rule applies.[16]

## III

Smith argues that even if the Venue and Vicinage
Clauses do not bar retrial of their own force, they are "in-
separably interwoven" with the Double Jeopardy Clause,
which, he claims, precludes retrial here. Tr. of Oral Arg.
23; see Brief for Petitioner 38–39, 44. Smith starts from the
premise that juries in criminal trials often resolve factual
disputes related to venue and, thus, can acquit defendants
if venue is absent. And because a jury's general verdict of
acquittal categorically precludes retrial for the same of-
fense under the Double Jeopardy Clause, Smith contends
that a judicial ruling that venue was improper on a motion
to acquit should have the same result. The Eleventh Cir-
cuit rejected this argument and held that the Double Jeop-
ardy Clause "is not implicated by a retrial in a proper
venue." 22 F. 4th, at 1244. We agree.

A judicial decision on venue is fundamentally different
from a jury's general verdict of acquittal. When a jury re-
turns a general verdict of not guilty, its decision "cannot be
upset by speculation or inquiry into such matters" by
courts. *Dunn* v. *United States*, 284 U. S. 390, 393–394
(1932); see *United States* v. *Powell*, 469 U. S. 57, 66–67
(1984). To conclude otherwise would impermissibly author-
ize judges to usurp the jury right. See *ibid.*; cf. *United
States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 572–573

_____

[16] Because the evidence is uniformly consistent with the retrial rule,
we need not determine the proper weight to give to this postratification
history. See *New York State Rifle & Pistol Assn., Inc.* v. *Bruen*, 597 U. S.
\_\_\_, \_\_\_–\_\_\_ (2022) (BARRETT, J., concurring) (slip op., at 1–2).

(1977). And because it is impossible for a court to be certain about the ground for the verdict without improperly delving into the jurors' deliberations, the jury holds an "'unreviewable power . . . to return a verdict of not guilty'" even "'for impermissible reasons.'" *Powell*, 469 U. S., at 63, 66–67; see *Dunn*, 284 U. S., at 393–394.

This rationale is consistent with the general rule that "[c]ulpability . . . is the touchstone" for determining whether retrial is permitted under the Double Jeopardy Clause. *Evans* v. *Michigan*, 568 U. S. 313, 324 (2013). When a trial terminates with a finding that the defendant's "criminal culpability had not been established," retrial is prohibited. *Burks*, 437 U. S., at 10. This typically occurs with "'a resolution, correct or not, of some or all of the factual elements of the offense charged.'" *Smith* v. *Massachusetts*, 543 U. S. 462, 468 (2005); see, *e.g.*, *Martin Linen*, 430 U. S., at 572. But it also extends to "essentially factual defense[s]" that negate culpability by "provid[ing] a legally adequate justification for otherwise criminal acts." *United States* v. *Scott*, 437 U. S. 82, 97–98 (1978); see *Burks*, 437 U. S., at 5, 10 (insanity defense).

Conversely, retrial is permissible when a trial terminates "on a basis unrelated to factual guilt or innocence of the offence of which [the defendant] is accused." *Scott*, 437 U. S., at 99. For example, the Double Jeopardy Clause is not triggered when a trial ends in juror deadlock, see *Blueford* v. *Arkansas*, 566 U. S. 599, 610 (2012), or with a judgment dismissing charges because of a procedural issue like preindictment delay, see *Scott*, 437 U. S., at 84. In these circumstances, the termination of proceedings is perfectly consistent with the possibility that the defendant is guilty of the charged offense.

The reversal of a conviction based on a violation of the Venue or Vicinage Clauses, even when styled as a "judgment of acquittal" under Rule 29, plainly does not resolve "the bottom-line question of 'criminal culpability.'" *Evans*,

568 U. S., at 324, n. 6; see also *Martin Linen*, 430 U. S., at 571 ("[W]hat constitutes an 'acquittal' is not to be controlled by the form of the judge's action").  Instead, such a reversal is quintessentially a decision that "the Government's case against [the defendant] must fail even though it might satisfy the trier of fact that he was guilty beyond a reasonable doubt."  *Scott*, 437 U. S., at 96.  In this case, then, the Eleventh Circuit's decision that venue in the Northern District of Florida was improper did not adjudicate Smith's culpability.  It thus does not trigger the Double Jeopardy Clause.

*    *    *

For these reasons, the judgment of the Court of Appeals for the Eleventh Circuit is affirmed.

*It is so ordered.*